Charles MCALLISTER, Plaintiff,

v.

NEW YORK CITY POLICE DEPARTMENT New York City Police Department Chief, William Bratton; Augustin Rabass; Gordon Pekusic; Francisco Vargas; Carlos Martinez; Anthony Vence; Kimio David–Rivera;

---

Joseph Rivera; Peter Maltalbano; Kevin Barry; John Freisen; Mickey Fontanez; Michael Pisano; Edward Latorres; Sally Hernandez–Pinero, New York City Housing Authority Chairwoman, Defendants.

No. 97Civ.7420 (KMW)(AJP).

United States District Court,
S.D. New York.

June 10, 1999.

Charles McAllister, Auburn, NY, pro se.

Elisa Baldwin, Asst. Corporation Counsel, New York City, for the City defendants.

Ronald P. Berman, New York City, for defendant Sgt. Gordon Pekusic of Housing Authority Police.

ORDER

KIMBA M. WOOD, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, contending that defendants denied him due process in the course of his arrest. All but one defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. In a Report and Recommendation dated March 22, 1999, familiarity with which is assumed, Magistrate Judge Andrew J. Peck recommended that defendants' motion for summary judgment be granted. Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews *de novo* those portions of the Reports to which plaintiff objects. For the reasons stated below, the Court adopts the Report and its Recommendation.

*I. Discussion*

Plaintiff raises five specific objections to the Report, which the Court will consider in turn.

First, plaintiff objects to the Report's conclusion that the complaint be dismissed as against Officers Pekusic and Rabassa, neither of whom were named in the amended complaint. The Report noted, and plaintiff does not disagree, that these two officers were first named in plaintiff's second affidavit opposing summary judgment. (*See* Report at 11.) As plaintiff did not allege that Officers Pekusic or Rabassa

beat him either in the amended complaint or in his deposition, the Report concluded that claims against these defendants must be dismissed. (*See* Report at 11–12) (quoting *Raskin v. Wyatt Co.,* 125 F.3d 55, 63 (2d Cir.1997)) (" '[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.' ") (citation omitted); *Harvey v. New York City Police Dep't,* 93 Civ. 7563, 1997 WL 292112, *2 n. 2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, ... the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims.") (citation omitted).

In his Objections, plaintiff argues that the reason he failed to name Pekusic or Rabassa as among those who physically assaulted him was because he learned only recently that these two individuals were on the scene of the arrest. (*See* Objections at 1–2.) The mere fact that these individuals were on the scene, however, does not mean that these two individuals participated in any physical assault on plaintiff. Plaintiff specifically identified those officers who were involved in the alleged assault in his deposition, and did not name either Pekusic or Rabassa. (*See* Report at 4 (quoting deposition testimony).) Plaintiff's assertion that if Pekusic or Rabassa were present, then they must have engaged in the assault upon plaintiff, is pure speculation.

Plaintiff's second objection is actually a request to re-serve defendants who have already been dismissed from this action for improper service. This objection is an effort to relitigate issues already addressed in Magistrate Judge Peck's Report and Recommendation of June 16, 1998, and October 21, 1998, which this Court adopted on December 14, 1998. As the Court has already ruled on this issue, plaintiff may

not raise it once again in his objections at this stage.

Plaintiff's third objection simply reiterates his claim of deliberate indifference to his medical needs. The Report concluded that plaintiff's claim on this point should be dismissed because he never presented any evidence that he had sought medical treatment from a defendant who had been properly served in this action. (See Report at 17–20.) Plaintiff's objections do not address the analysis of the Report, but repeat complaints relating to defendants who have already been dismissed from this case. Accordingly, plaintiff's argument on this point provides no reason to reject the Report.

▪ Plaintiff's fourth objection is that the circumstances surrounding his arrest were suspicious, raising an inference of conspiracy, negligence, and discrimination. As the Report pointed out, these vague allegations of a coverup and conspiracy are an attempt to relitigate plaintiff's underlying conviction. Plaintiff cannot prevail on such claims where the underlying conviction or sentence has not been reversed or otherwise invalidated. *See Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). As the Supreme Court has refused to "expand opportunities for collateral attack" of convictions via an action under § 1983, *see id.* at 484–85, 114 S.Ct. 2364, plaintiff's claim on this point is without merit.

▪ Plaintiff's fifth objection is that the Report erroneously concludes that he has failed to show a policy or custom of unconstitutional behavior. (*See* Report at 24–31) (citing *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Plaintiff's objections attempt to show a policy or custom of unconstitutional behavior by pointing to highly publicized recent incidents of police misbehavior, emphasizing ongoing investigations into incidents of alleged brutality against African–Americans. (*See* Objections at 10.) Even if the Court were to accept the tenuous relation between these incidents and the facts of plaintiff's arrest and conviction, these incidents do not amount to a "custom or policy." Plaintiff must show either that "the municipality (1) so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within the jurisdiction, or (2) had notice of but repeatedly failed to make any meaningful investigation into ... charges of misconduct by lower level employees...." *Covington v. City of New York,* 916 F.Supp. 282, 288 (S.D.N.Y.1996) (citations omitted). Plaintiff has failed to make this showing.

Plaintiff's final objection advances further complaints relating to defendants' alleged failure to provide discovery. The Court has repeatedly addressed this issue. In an Order dated January 5, 1999, the Court affirmed Magistrate Judge Peck's decision to close discovery, rejecting plaintiff's objections dated November 12, 1998 (two such letters of objection), a third objection (undated), a fourth objection dated December 15, 1998, and a fifth objection (undated). Just as the Court did in its Orders of December 14, 1998, and January 5, 1999, the Court confirms that discovery in this case is closed.

## II. Conclusion

For the reasons stated above, the Court adopts the Report and its Recommendation. Defendants' motions are granted. [Docs. No. 70, 72.] All of plaintiff's claims except for plaintiff's claim of unlawful force against defendant Mickey Fontanez are dismissed. The Court deems this case trial ready as of June 7, 1999.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Pro se plaintiff Charles McAllister brings this 42 U.S.C. § 1983 action seeking compensatory and punitive damages against New York City and several police officers, alleging due process violations of

excessive force, false arrest, malicious prosecution and denial of medical treatment during McAllister's arrest and the subsequent police investigation of the events surrounding his arrest. Defendants have moved for summary judgment.[1]

For the reasons set forth below, I recommend that defendants' summary judgment motion be granted. McAllister's excessive force and denial of medical treatment claims fail because McAllister has not shown that the served defendants were personally involved in either alleged violation. McAllister's false arrest and malicious prosecution claims are not cognizable under *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994), because his criminal conviction has not been reversed or otherwise declared invalid. Further, McAllister's *Monell* claims against the City and then Police Commissioner Bratton are without merit because McAllister did not allege that any specific municipal policy or practice caused his alleged constitutional deprivations.

### FACTS

On June 2, 1994, McAllister was one of two passengers in the back seat of a car driven by Harvey Cousins, which stopped at a traffic light on Amsterdam Avenue near 181st Street. (McAllister 1/6/99 Br. at p. 2–3; McAllister 2/8/99 Rule 56.1 Stmt. ¶ 1; City Rule 56.1 Stmt. ¶ 3; Pekusic Aff. ¶¶ 3, 4; Pekusic Rule 56.1 Stmt. ¶¶ 1, 2.)[2] Defendant police officer Rabassa and defendant Housing Authority police officer Pekusic were informed separately by witnesses that gunshots had been fired by the people in that car. (City Rule 56.1 Stmt. ¶ 3; Baldwin Aff. Ex. D: Freisen

Report at 12; Pekusic Rule 56.1 Stmt. ¶ 2; Pekusic Aff. ¶ 3.) Officers Rabassa and Pekusic radioed for assistance, and along with Officer Vargas, pursued the car. (McAllister 1/6/99 Aff. ¶ 6; City Rule 56.1 Stmt. ¶ 4; Baldwin Aff. Ex. D: Freisen Report at 12; Pekusic Rule 56.1 Stmt. ¶ 2; Pekusic Aff. ¶ 4.) According to defendants, when the three officers reached the car, McAllister pointed a gun out of the car's back window at the officers. (City Rule 56.1 Stmt. ¶ 5; Baldwin Aff.Ex. D: Freisen Report at 12; Pekusic Rule 56.1 Stmt. ¶ 3; Pekusic Aff. ¶¶ 4–5.) Officers Pekusic and Rabassa shot at McAllister, but did not hit him or any of the car's other occupants. (Baldwin Aff.Ex. B: McAllister Dep. at 104–05; City Rule 56.1 Stmt. ¶ 5; Baldwin Aff.Ex. D: Freisen Report at 12; Pekusic Rule 56.1 Stmt. ¶ 5; Pekusic Aff. ¶ 5.) According to McAllister, he was on the floor in the back of the car when defendant Officers David–Rivera and Rivera initially shot at the car, and that defendant Officers Rabassa, Vargas, Pekusic, Maltalbano, Fontanez, Vence and Martinez subsequently shot at the car. (Baldwin Aff.Ex. B: McAllister Dep. at 104; McAllister 1/6/99 Aff. ¶¶ 2, 11–12; McAllister 1/6/99 Br. at p. 2.)

As traffic cleared, the car McAllister was in headed toward an entrance ramp to the Harlem River Drive, where it stopped with a flat tire. (Pekusic Rule 56.1 Stmt. ¶ 4; Pekusic Aff. ¶ 6; City Rule 56.1 Stmt. ¶ 6; Baldwin Aff.Ex. D: Freisen Report at 12–13; Baldwin Aff.Ex. B: McAllister Dep. at 102–04, 106.) Police officers surrounded the car, ordered McAllister and the other occupants out of the car, and placed him under arrest. (City Rule 56.1

---

1. Defendant Officer Mickey Fontanez does not move for summary judgment on McAllister's § 1983 excessive force claim (City Notice of Motion at 2), and that claim therefore remains for trial.

2. The City argues that all of the facts in its Rule 56.1 Statement should be deemed admitted, because McAllister failed to comply with Local Rule 56.1. (City Reply Br. at p. 2.)

While McAllister's Rule 56.1 Statement is less than exemplary, it is well settled that a pro se's papers are to be read liberally, and to the extent that McAllister sets forth facts based upon personal knowledge in his signed briefs, his affidavits and his Rule 56.1 Statement, the Court will consider those facts and will not deem admitted contrary facts in the City's Rule 56.1 Statement.

Stmt. ¶ 6; Baldwin Aff.Ex. D: Freisen Report at 12–13; Baldwin Aff.Ex. B: McAllister Dep. at 106–07; Pekusic Rule 56.1 Stmt. ¶ 4; Pekusic Aff. ¶ 6.) McAllister states that when he got out of the car, the police beat and kicked him, breaking his nose and cutting his lip. (Baldwin Aff.Ex. B: McAllister Dep. at 107–12; *see also* McAllister 1/6/99 Aff. ¶¶ 13–14.) McAllister also claims that defendants called him "racist names." (McAllister 1/6/99 Aff. ¶ 13.)[3] At his deposition, McAllister identified the officers who beat him, as follows:

> **A [McAllister]:** [After the car stopped] [t]hey told us to get our with our hands up.
>
> **Q [Defense Attorney]:** Do you know who said that?
>
> **A:** All of them. There was about maybe four. *Officer Martinez, Officer Peter Maltalbano, Rivera, Kimio, Joseph Rivera, Fontanez, Mickey.*
>
> . . . .
>
> **Q:** *How did you remember their names? Did you see their name tags?*
>
> **A:** *Yes.*
>
> . . . .
>
> **Q:** When you got out of the car, where you immediately place[d] on the ground?
>
> . . . .
>
> **A:** Yes. They just jumped on me.
>
> **Q:** Who did?
>
> **A:** The cops.
>
> **Q:** *Which ones?*
>
> **A:** All of them. From what I've got in the reports, all of the cops that were involved in the arrest. *The ones I particularly identified as Martinez, Kimio Rivera, Maltalbano, Mickey.*
>
> **Q:** *Are you identifying them based on your having seen their name tags at the time of the incident?*
>
> **A:** *Yes* . . . .

. . . .

> **Q:** *Did you see any of the persons who you said hit you?*
>
> . . . .
>
> **A:** *I seen the people I named. Kimio kicked me. Rivera was kicking me. Rivera and Martinez was stomping me and pushing me.* Those guys right there.

(Baldwin Aff.Ex. B: McAllister Dep. at pp. 107–12, emphasis added.) McAllister also stated at his deposition that he did not remember Officer Pekusic beating him and only accused Pekusic of improperly shooting into the car:

> **Q [Pekusic's Attorney]:** Is it your claim that my client, Gordon Pekusic, improperly fired his gun at you?
>
> **A [McAllister]:** Yes.
>
> **Q:** Do you claim that Gordon Pekusic did anything else that was improper?
>
> **A:** From my recollection, my allegation against Mr. Pekusic was that he fired his weapon at me for no reason.
>
> **Q:** *Other than his having fired his gun at you, did you claim or allege he did anything else that was improper in any way?*
>
> **A:** *I don't know whether or not he was a part of the assault when I came out of the car, I don't recall seeing him, I don't know.*
>
> **Q:** *Is there anything you do know at this time that you claim he did or did not do, besides improperly discharging his weapon?*
>
> **A:** *No.*

(Berman Aff.Ex. B: McAllister Dep. at pp. 231–32, emphasis added.)

Officer Pekusic confirmed in his affidavit that he did not physically participate in McAllister's arrest and that he did not see any officers strike McAllister. (Pekusic Aff. ¶ 7; Pekusic Rule 56.1 Stmt. ¶ 5.)[4] In

---

3. In a statement to the CCRB, McAllister had alleged that Officer Rivera used a racial slur against the car's driver. (*See* McAllister

1/15/99 Exs.: 10/18/95 CCRB Closing Report, at p. 0028.)

4. Officer Pekusic stated: "At no time did I observe any officer strike the plaintiff. I did

response to defendants' summary judgment motion, McAllister alleged in his January 6, 1999 affidavit that he remembered that Pekusic, Rabassa and Vargas punched and kicked him during his arrest. (McAllister 1/6/99 Aff. ¶ 13; *see also* McAllister 2/8/99 Rule 56.1 Stmt. ¶ 6: "Plaintiff states that upon further information provided within the trial testimony and remembrance of plaintiff defendant Pekusic did kick and punch him while calling him racist epithets."; McAllister 2/8/99 Aff. ¶¶ 3, 4, 9, 11; McAllister 2/8/99 Br. at 4.)

The parties do not contest that defendant Officers David–Rivera, Rivera, Vence, Martinez, Fontanez and Maltalbano were at the scene when McAllister was arrested. (City Rule 56.1 Stmt. ¶ 6; Baldwin Aff.Ex. D: Freisen Report at 11, 13.)

McAllister claims that after he was arrested he was put into a police car driven by defendant Officers Martinez and Vence, which collided with a parked car, and as a result he suffered injuries to his head, back, right shoulder, neck, face and nose. (Baldwin Aff.Ex. B: McAllister Dep. at 117–23; Am.Cplt. at p. 3.) McAllister claims that "defendants did not provide medical treatment and/or examination for the plaintiff" either in the car, or when a second police car came to take him to the precinct. (Am.Cplt. at p. 3–4; Baldwin Aff.Ex. B: McAllister Dep. at 122–23.) McAllister, however, does not identify whom he asked for medical assistance when he was in the police car. McAllister claims in his amended complaint that defendants Pisano and Latorres "refused to provide [him] with medical treatment" at the police precinct. (Am.Cplt. at p. 3–4.) At his deposition, however, McAllister stated that he thought Martinez was the officer who said "they couldn't do anything until [he] was seen by a detective." (Baldwin Aff.Ex. B: McAllister Dep. at 124–25.) McAllister remained at the precinct for

about twelve hours. (Baldwin Aff.Ex. B: McAllister Dep. at 125.)

McAllister claims that he first received medical attention when he was in central booking, two or three days after his arrest. (*Id.* at 128) McAllister told the central booking "intake woman" that "basically [he] was beat up." (*Id.* at 128–29). The "intake woman" told McAllister that "when [he saw] the doctor then [he could] tell them [his] complaints." (*Id.* at 129.) McAllister, however, did not see a doctor until after he was arraigned and in the Manhattan Detention Center, and then the doctor only took blood. (*Id.* at 130.)

Defendant John Freisen, then the Commanding Officer of the 34th Precinct, conducted an investigation of McAllister's arrest with assistance from defendant Kevin Barry, then the Commanding Officer of the 30th Precinct; neither Freisen nor Barry were present at McAllister's arrest. (City Rule 56.1 Stmt. ¶¶ 2, 9; Baldwin Aff.Ex. D: Freisen Report at 15, 17.) Capt. Freisen concluded that Officer Rabassa acted in accordance with department guidelines by firing at " 'an armed perpetrator who had turned toward the officers and pointed a gun at them, thus placing the officers in imminent fear of their safety.' " (City Rule 56.1 Stmt. ¶ 7; Baldwin Aff.Ex. D: Freisen Report at 18.) In addition, defendant Edwin Latorres, a detective in the Crime Scene Unit, gathered evidence at the arrest site, took pictures, and subsequently prepared a report. (City Rule 56.1 Stmt. ¶ 8; Baldwin Aff.Ex. E: Latorres Report; Baldwin Aff.Ex. D: Reports at pp. 22–23.) The Police Department Firearms Discharge Review Board also conducted an investigation and concluded that Officer Rabassa did not violate any department firearm guidelines. (City Rule 56.1 Stmt. ¶ 10; Baldwin Aff.Ex. D: Finding Of Dep't Firearms Discharge Review Bd. at pp. 2, 7.)

---

not participate in the physical apprehension and arrest of Mr. McAllister and his companions, and at no time did I have physical contact with him or use any degree of force

whatsoever except to the extent that I discharged my weapon as described above." (Pekusic Aff. ¶ 7.)

McAllister was convicted in State Supreme Court and sentenced to ten years to life for possession of a weapon in the second and third degrees and one year for possession of a controlled substance in the seventh degree. (City Rule 56.1 Stmt. ¶ 11; Baldwin Aff.Ex. C & Berman Aff.Ex. F: McAllister's Criminal Record at p. 6; Berman Aff.Ex. E: DA Worksheets at p. 2; McAllister 2/8/99 Rule 56.1 Stmt. ¶ 7.) Despite his convictions, McAllister alleges that he never possessed a weapon and that defendants' allegations are part of a cover up of their misconduct. (*E.g.*, McAllister 1/6/99 Br. at 5.)

On December 14, 1998, this Court dismissed McAllister's claims against unserved defendants Martinez, Vence, David–Rivera, Rivera, Maltalbano, Pisano, Vargas and Hernandez–Pinero. (*See* 12/14/98 Wood, D.J. Order, adopting Peck, M.J., Report & Rec. in 10/21/98 Conf.Tr. at pp. 3, 5–6.)[5]

### *ANALYSIS*

■ To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Jackson v. Johnson,* 15 F.Supp.2d 341, 355 (S.D.N.Y. July 23, 1998) (Kaplan, D.J. & Peck, M.J.); *Williams v. Kane,* 95 Civ. 0379, 1997 WL 527677 at *3 (S.D.N.Y. Aug.25, 1997)

(Peck, M.J.) "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *accord, e.g., Jackson v. Johnson,* 15 F.Supp.2d at 355–56; *Williams v. Kane,* 1997 WL 527677 at *3; *Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at *4 (S.D.N.Y. March 24, 1997) (Peck, M.J.); *Morris v. Dann,* No. 95–CV–975, 1996 WL 732559 at *3 (N.D.N.Y. Dec.11, 1996); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.). Proof that state procedural law was violated does not by itself constitute a deprivation of due process because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir. 1990); *accord, e.g., Jackson v. Johnson,* 15 F.Supp.2d at 356; *Williams v. Kane,* 1997 WL 527677 at *3; *Ruiz v. Selsky,* 1997 WL 137448 at *4; *Zamakshari v. Dvoskin,* 899 F.Supp. at 1104.[6]

**I. *ALL DEFENDANTS (EXCEPT NON-MOVANT FONTANEZ) SHOULD BE GRANTED SUMMARY JUDGMENT ON MCALLISTER'S EXCESSIVE FORCE CLAIM BECAUSE MCALLISTER FAILED TO CLAIM THAT THESE DEFENDANTS HAD ANY PERSONAL INVOLVEMENT IN THE ALLEGED USE OF EXCESSIVE***

---

**5.** In addition, by Opinion and Order dated June 15, 1998, the Court dismissed McAllister's claim against the Police Department on the ground that it is not a suable entity, but allowed McAllister to amend to substitute the City for the Police Department. *McAllister v. New York City Police Dep't,* 97 Civ. 7420, 1998 WL 314732 at *1–2 (S.D.N.Y. June 15, 1998) (Peck, M.J.).

McAllister has made numerous discovery requests in response to defendants' summary judgment motion. (*See* McAllister 12/14/98 Br. at 3, 5–15; McAllister 1/6/99 Br. at 6–17.) Discovery in this case is closed, however, and Rule 56(f), which allows a party to oppose summary judgment

where it needs additional discovery to support its motion, applies to summary judgment motions made before discovery is concluded. *See, e.g.,* Fed.R.Civ.P. 56(f); *Henry v. Community Resource Ctr., Inc.,* 95 Civ. 5480, 1996 WL 251845 at *9 n. 2 (S.D.N.Y. May 13, 1996) (Peck, M.J.). The present summary judgment motion, however, comes after the conclusion of discovery, and McAllister had ample time to complete discovery. Accordingly, McAllister's discovery requests are denied.

**6.** For a discussion of the applicable standards governing summary judgment motions, *see, e.g., Ruiz v. Selsky,* 1997 WL 137448 at *3, and cases cited therein.

FORCE[7]

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *accord, e.g., Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Jackson v. Johnson,* 15 F.Supp.2d 341, 365 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.); *Wright v. Nunez,* 950 F.Supp. 610, 611 (S.D.N.Y. 1997) (Martin, D.J. & Peck, M.J.); *McCray v. Kralik,* 96 Civ. 3891, 1996 WL 378273 at *3 (S.D.N.Y. July 1, 1996) (Peck, M.J.); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions."); *Wiesner v. Willkie Farr & Gallagher,* 88 Civ. 8753, 1989 WL 129510 at *1 (S.D.N.Y. Oct.20, 1989) (Wood, D.J.), *aff'd mem.,* 907 F.2d 145 (2d Cir.1990).

"The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [citizens] by failing to act

on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d at 873; *accord, e.g., Wright v. Smith,* 21 F.3d at 501; *Jackson v. Johnson,* 15 F.Supp.2d at 365; *Watson v. McGinnis,* 964 F.Supp. at 130; *Wright v. Nunez,* 950 F.Supp. at 611; *Lloyde v. Lord,* 94 Civ. 484, 1997 WL 123996 at *1 (S.D.N.Y. March 19, 1997) (Wood, D.J.); *McCray v. Kralik,* 1996 WL 378273 at *3; *Zamakshari v. Dvoskin,* 899 F.Supp. at 1109.

McAllister claims that "[a]s soon as the plaintiff exit[ed] the car, defendants Martinez, Vence, David and Rivera attacked plaintiff, and Harvey and Michael Spruil kicking, punching and battering him and assaulting them while outside of the car on Harlem River Drive." (Am.Cplt. at p. 3.) The Court dismissed McAllister's claims against Martinez, Vence, David–Rivera, and Rivera because they were never served. (*See* 12/14/98 Wood Order, adopting Peck Report & Rec. in 10/21/98 Conf. Tr. at 3, 5–6.) McAllister did not name Spruil or Harvey as defendants, nor did he serve them.

 McAllister alleged for the first time in his second affidavit opposing summary judgment that defendant Officers Pekusic, Rabassa and Vargas beat him. (*See* McAllister 1/6/99 Aff. ¶¶ 2, 13; McAllister 2/8/99 Rule 56.1 Stmt. ¶ 6.) The Court dismissed all claims against Vargas for non-service. (12/14/98 Wood Order, adopting Peck Report & Rec. in 10/21/98 Conf Tr. at 3, 5–6.) Because McAllister did not allege in his amended complaint that Officers Pekusic or Rabassa beat him, the Court will not consider these allegations first raised in opposition to summary judgment. *See, e.g., Harvey v. New York City Police Dep't,* 93 Civ. 7563, 1997 WL 292112 at *2 n. 2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' mo-

---

7. As noted above, McAllister does allege that defendant Officer Fontanez used excessive force in his arrest, and Officer Fontanez has not moved for summary judgment on the ex-

cessive force claim. (*See* fn. 1 above.) Thus, McAllister's excessive force claim against Officer Fontanez remains for trial.

tion, . . . the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims."); *Giovia v. Kiamesha Concord, Inc.*, 92 Civ. 3935, 1993 WL 539530 at *5 (S.D.N.Y. Dec.23, 1993) (allegations absent from pleadings cannot be considered on a summary judgment motion); *Burke v. Jacoby*, 89 Civ. 1695, 1991 WL 221417, 1991 U.S. Dist. LEXIS 14617 at *14 (S.D.N.Y. Oct. 11, 1991) (refusing to consider allegations omitted from amended complaint on a summary judgment motion), *aff'd*, 981 F.2d 1372 (2d Cir.1992), *cert. denied*, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 940 n. 15 (S.D.N.Y. 1983) (refusing to consider allegation first raised in reply papers, and not suggested in the complaint); *Medical Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Connecticut, Inc.*, 518 F.Supp. 1100, 1109 (D.Conn.), *aff'd*, 675 F.2d 502 (2d Cir.1982).

Moreover, at his deposition, McAllister did not name Pekusic or Rabassa as having assaulted him. (*See* Baldwin Aff.Ex. B: McAllister Dep. at 107, 12, & Berman Aff.Ex. B: McAllister Dep. at 231–32, both quoted at pages 692–93 above.) It is black letter law that affidavits which contradict prior deposition testimony are disregarded on a summary judgment motion. *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) ("[W]e follow the rule that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.' "); *Hayes v. New York City Dep't of Corrections*, 84

F.3d 614, 619 (2d Cir.1996); *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *EEOC v. Johnson & Higgins, Inc.*, 93 Civ. 5481, 1998 WL 778369 at *7 (S.D.N.Y. Nov.6, 1998) (Peck, M.J.); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 386 n. 7 (S.D.N.Y.1998) (Stein, D.J. & Peck, M.J.); *SEC v. Softpoint, Inc.*, 958 F.Supp. 846, 860 (S.D.N.Y.1997) (Sotomayor, D.J.), *aff'd mem.*, 159 F.3d 1348 (2d Cir.1998); *Buti v. Impressa Perosa, S.R.L.*, 935 F.Supp. 458, 471–72 (S.D.N.Y.1996) (Schwartz, D.J. & Peck M.J.) (citing cases), *aff'd*, 139 F.3d 98 (2d Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998); *Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.*, 94 Civ. 2732, 1996 WL 143903 at *6 (S.D.N.Y. March 29, 1996).[8]

Officer Pekusic submitted an affidavit that he did not have any physical contact with McAllister. (Pekusic Aff. ¶ 7.) Because McAllister did not allege in the amended complaint or in his deposition that Officers Pekusic or Rabassa beat him, they are entitled to summary judgment on McAllister's excessive force-beating claim.

■ McAllister's first cause of action, however, also alleges that defendant Officers Pekusic and Rabassa (and other officers)[9] fired shots into the car in which McAllister was a passenger. (Am.Cplt. at pp. 2–3.) Shooting at someone, obviously, can state a claim for excessive force. *See, e.g., Thomas v. Roach*, 165 F.3d 137, 143–

**8.** Deposition testimony is subject to cross-examination and is therefore more reliable than an affidavit, particularly when the affidavit is procured solely in response to a motion. *See, e.g., Hayes v. New York City Dep't of Corrections*, 84 F.3d at 619; *EEOC v. Johnson & Higgins, Inc.*, 1998 WL 778369 at *7; *May v. Esposito*, 96 Civ. 5475, 1997 WL 362447 at *3 (S.D.N.Y. July 1, 1997); *Socline Corp. v. Podell*, 93 Civ. 1500, 1996 WL 109076 at *6 (S.D.N.Y. March 12, 1996); *Bresler v. Hos-*

*tage*, 696 F.Supp. 46, 51 (S.D.N.Y.1988); *Bodley v. New York Hosp.*, 86 Civ.2018, 1988 WL 61976 at *8 (S.D.N.Y. June 8, 1988).

**9.** As noted, all the other officers named in this cause of action were dismissed for non-service, except for Officer Fontanez, who has not moved for summary judgment on the excessive force cause of action. (*See* fn. 1 above.)

44 (2d Cir.1999) (denying summary judgment on plaintiff's claim that police officers used excessive force by shooting); *Hemphill v. Schott*, 141 F.3d 412, 416–17 (2d Cir.1998); *Salim v. Proulx*, 93 F.3d 86, 88–89 (2d Cir.1996); *Snall v. City of New York*, No. 97–CV–5204, 1998 WL 960296 at *4 (E.D.N.Y. Dec.7, 1998); *Rossi v. New York City Police Dep't*, 94 Civ. 5113, 1998 WL 65999 at *6 (S.D.N.Y. Feb.17, 1998); *Noel v. Houtman*, No. 94–CV–1647, 1997 WL 176316 at *5–6 (N.D.N.Y. April 8, 1997) (Pooler, D.J.); *Javid v. Scott*, 913 F.Supp. 223, 225–28 (S.D.N.Y.1996). Defendants have ignored this aspect of the excessive force claim. It is undisputed that Officers Pekusic and Rabassa fired three and seven shots, respectively, into the car. (Baldwin Aff.Ex. D: Firearms Discharge Report at 6 & Freisen Report at 10.) It is also undisputed, however, that McAllister was not hit or hurt by any of the shots. (Baldwin Aff.Ex. B: McAllister Dep. at 104–05; City Rule 56.1 Stmt. ¶ 5; Baldwin Aff.Ex. D: Freisen Report at 12; Pekusic Rule 56.1 Stmt. ¶ 5; Pekusic Aff. ¶ 5.) Thus, McAllister suffered no damage, and defendants Pekusic and Rabassa are entitled to summary judgment on the excessive force-shooting claim. *See, e.g., Knight v. Caldwell*, 970 F.2d 1430, 1432–33 (5th Cir.1992) (arrestee must prove that he suffered some injury in order to prevail in an excessive force claim), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993); *Murphy v. Neuberger*, 94 Civ. 7421, 1996 WL 442797 at *8 (S.D.N.Y. Aug.6, 1996) ("Although the injuries suffered need not be permanent or severe to recover under an excessive force claim, ... plaintiff's complaint does not allege any injuries resulting from the use of handcuffs. Plaintiff only asserts that he was forced to travel to Albany in a 'painful, cramped, dehumanizing position.' ... Because the facts alleged do not constitute excessive force, plaintiff's claim is dismissed."); *Landy v. Irizarry*, 884 F.Supp. 788, 799 n. 14 (S.D.N.Y.1995) (Wood, D.J.) ("Plaintiff alleges no injury as a result of being kicked. An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim."); *Roundtree v. City of New York*, 778 F.Supp. 614, 622 (E.D.N.Y.1991) (dismissing plaintiff's excessive force claim because "[t]o allege that [plaintiff] was 'with undue force, pushed ... into one of the ... cars' and that his injuries from this push were 'emotional pain and suffering' is not to state a claim that the use of force was 'unreasonable'. Indeed, to conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with the arrested person is actionable. This would transform the constitutional wrong of excessive force in arrest into the common law tort of battery; and it would reduce the holding in *Graham [v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ] into an empty proposition against which no use of force is reasonable as a matter of law.").

█ Finally, McAllister cannot maintain an excessive force claim against defendants Freisen, Latorres and Barry. First, his complaint does not allege an excessive force claim against these defendants. (*See* Am.Cplt. at pp. 2–3.) He does not name them as attackers in his deposition, or in any of his summary judgment submissions. Because McAllister does not claim that these defendants had any personal involvement in the alleged beating, or otherwise supervised subordinates in a grossly negligent manner, defendants Freisen, Latorres and Barry are entitled to summary judgment dismissing McAllister's excessive force claim (which, as noted, the Court does not believe was ever asserted against them). *See, e.g., Baskerville v. Goord*, 97 Civ. 6413, 1998 WL 778396 at *6 (S.D.N.Y. Nov.5, 1998) (summary judgment on plaintiff's excessive force claim where defendants were not "present during or had any personal involvement with the alleged assault"); *Harvey v. New York City Police Dep't*, 1997 WL 292112 at *1 ("plaintiff's ... claims of excessive force ... must be dismissed as to individual defendants ..., because plaintiff has ad-

duced no evidence that any of them were personally involved in any use of force against him"); *Pravda v. City of Albany,* 956 F.Supp. 174, 181–82 (N.D.N.Y.1997) (summary judgment for administrative agency defendants because "the complaint reveals that Plaintiff has not alleged any conduct whatsoever on [their] part ... that could form the basis of excessive force claims against these Defendants" and summary judgment for supervisory officers because "Plaintiff does not allege any facts from which the Court could reasonably infer that Defendants [supervisory officers] participated in this alleged mistreatment, were present when it allegedly occurred, knew about it, or were grossly negligent in any way"); *Show v. Patterson,* 955 F.Supp. 182, 188 (S.D.N.Y.1997) (summary judgment for defendants on plaintiffs' excessive force claim where plaintiffs failed to submit evidence "indicat[ing] any personal involvement by either of these defendants in the acts alleged in plaintiffs' complaints. Similarly, plaintiffs do not allege any facts indicating that [defendants] created or were aware of a prison policy of violating prisoners' rights by ... using excessive force. Finally, the complaints are devoid of any allegations or implications that [defendants] supervised subordinates in a grossly negligent manner"); *Wright v. Naranjo,* No. 94–CV–2461, 1996 WL 449276 at *4 (E.D.N.Y. Aug.1, 1996) (dismissing plaintiff's excessive force claim against defendant in her individual capacity, because plaintiff "fails to allege that [defendant] was personally involved in the use of force against him").

## II. *ALL DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON MCALLISTER'S DENIAL OF MEDICAL TREATMENT CLAIM BECAUSE MCALLISTER FAILED TO PRESENT ANY EVIDENCE THAT DEFENDANTS HAD ANY PERSONAL INVOLVEMENT IN THE ALLEGED DENIAL OF MEDICAL TREATMENT*

McAllister's second claim is for failure to provide him with medical treatment. (Am. Cplt. at pp. 4–5.) Because McAllister's alleged deprivation of medical treatment arose when he was a pretrial detainee, his claim is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See, e.g., City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996); *Grant v. New York City Dep't of Corrections,* 104 F.3d 355, No. 96–2469, 1996 WL 734052 at *1 (2d Cir. Dec.23, 1996); *Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979)); *Smith v. Montefiore Med. Ctr.,* 22 F.Supp.2d 275, 280 (S.D.N.Y.1998); *Santiago v. James,* 95 Civ. 1136, 1998 WL 474089 at *6 (S.D.N.Y. Aug.11, 1998); *McFadden v. Solfaro,* 95 Civ. 1148 & 3790, 1998 WL 199923 at *4 (S.D.N.Y. April 23, 1998); *Hamilton v. Broomfield,* 95 Civ. 3241, 1998 WL 17697 at *3 & n. 2 (S.D.N.Y. Jan.20, 1998); *Bailey v. Tricolla,* No. CV–94–4597, 1996 WL 733078 at *3 (S.D.N.Y. Dec.11, 1996); *Irrizarry v. Kenny,* 92 Civ. 1511, 1995 WL 678747 at *4 (S.D.N.Y. Nov.14, 1995); *Owens v. Colburn,* 860 F.Supp. 966, 973–75 (N.D.N.Y. 1994), *aff'd mem.,* 60 F.3d 812 (2d Cir. 1995).

■ "[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner.... Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst,* 101 F.3d at

856; *see also, e.g., Grant v. New York City Dep't of Corrections,* 1996 WL 14463, at *1; *Wicks v. Qualtere,* Nos. 95–CV–425 & 426, 1997 WL 176338 at *3 (N.D.N.Y. April 4, 1997) (Pooler, D.J.); *Landy v. Irizarry,* 884 F.Supp. 788, 801 n. 20 (S.D.N.Y.1995) (Wood, D.J.). Deliberate indifference may be shown

> by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. Thus, in order to establish deliberate indifference, a plaintiff must show "something more than mere negligence"; but proof of intent is not required, for the deliberate-indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

*Weyant v. Okst,* 101 F.3d at 856 (quotations & citations omitted); *see also, e.g., Bryant v. Maffucci,* 923 F.2d at 983; *Hamilton v. Broomfield,* 1998 WL 17697 at *3; *Wicks v. Qualtere,* 1997 WL 176338 at *3; *Montalvo v. Jennings,* 93 Civ. 8351, 1996 WL 148483 at *4 (S.D.N.Y. April 1, 1996) (Wood, D.J.).

McAllister claims that he sustained injuries from the officers who beat him while arresting him and from the police car accident on the way to the precinct, and that Officers Martinez, Vence, Pisano, Latorres, Freisen and Barry did not provide medical treatment thereafter. (Am.Cplt. at pp. 3–4, 5.) As stated above at page 8, the Court dismissed all claims against Martinez, Vence and Pisano because they were never served.

 McAllister does not state in his complaint or response to defendants' summary judgment motion when or to whom he complained of injuries and that he was in need of medical attention (Am.Cplt. at p. 4), though McAllister stated at his deposition that he asked Martinez for medical aid and it was denied (Baldwin Aff.Ex. B: McAllister Dep. at 124–25). McAllister's claims against Martinez have been dismissed for non-service, however, and

McAllister did not present any evidence that Latorres, Freisen or Barry were ever made aware that he was in need of medical assistance. Since there is no evidence that Latorres, Freisen or Barry showed deliberate indifference to McAllister's need for medical attention, defendants should be granted summary judgment on McAllister's denial of medical treatment claim. *See, e.g., Bewry v. Hopkins,* 125 F.3d 843 (table), No. 96–2829, 1997 WL 589683 at *1 (2d Cir. Sept.22, 1997) (summary judgment for defendants where "[a]lthough [plaintiff's] gunshot wound qualifies as a serious medical condition, no evidence exists that the police officers showed deliberate indifference to his condition. At no time did [plaintiff] indicate to the officers that he was in need of treatment or that he wanted to see a doctor."), *cert. denied,* ─── U.S. ───, 118 S.Ct. 1533, 140 L.Ed.2d 683 (1998); *Santiago v. James,* 1998 WL 474089 at *6 (summary judgment for defendant where "Plaintiff does not offer any information to support his statement that Defendants were deliberate in neglecting his medical needs because Plaintiff does not demonstrate that Defendants intentionally or knowingly deprived Plaintiff of his medical needs. Plaintiff's allegations that Defendants failed to carry an asthma inhaler in their medical bag are insufficient to establish deliberate indifference because there is nothing to indicate that Defendants knew Plaintiff needed the inhaler."); *Yant v. Scholack,* 95 Civ. 9462, 1998 WL 157053 at *7 (S.D.N.Y. April 3, 1998) (summary judgment for defendants because "plaintiff has not alleged, and the evidence fails to demonstrate, that any of the named defendants had any personal involvement in, or responsibility for, plaintiff's failure to receive [medical treatment]. In order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant."); *Hamilton v. Broomfield,* 1998 WL 17697 at *3 (dismissing plaintiff's denial of medical treatment claim because, *inter alia,* "plaintiff [does

not] allege that the officers were aware that 'a substantial risk of serious harm' existed"); *Wicks v. Qualtere*, 1997 WL 176338 at *3 (plaintiff's claim that the Chief Administrative Officer, "violated his rights by refusing to allow [plaintiff] to go to the hospital ... fails because [plaintiff] does not allege that [defendant] had any personal involvement in the medical decisions made following his fall. Respondeat superior liability does not lie against supervisors in section 1983 actions."); *Landy v. Irizarry*, 884 F.Supp. at 801–02 ("Neither in his Complaint, 3(g) Statement, nor in his deposition does Plaintiff mention Defendants ... as being involved in any denial of medical treatment. His only specific reference to any individual concerning a denial of medical treatment is to [someone], who has never been served with the Complaint in this action. Because Plaintiff fails to allege or offer specific facts linking either Defendant [police officers] to his requests and alleged denial of medical treatment, Defendants are entitled to summary judgment on this issue.").

### III. *ALL DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON MCALLISTER'S FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS UNDER HECK V. HUMPHREY*

The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994), that in order for a § 1983 plaintiff who has been convicted to recover damages for an unconstitutional conviction or imprisonment, including false arrest, malicious prosecution, or other harm which would invalidate the conviction or sentence, the plaintiff must prove the conviction or sentence has been reversed or otherwise declared invalid:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486–87, 114 S.Ct. at 2372 (fn.omitted). The Supreme Court explained that permitting a § 1983 attack on a conviction that still stands would "expand opportunities for collateral attack" and might risk " 'the creation of two conflicting resolutions arising out of the same or identical transaction.' " *Id.* at 484–85, 114 S.Ct. at 2371; *see also, e.g., Jackson v. Johnson*, 15 F.Supp.2d 341, 348, 357–58 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Rossi v. New York City Police Dep't*, 94 Civ. 5113, 1998 WL 65999 at *5 (S.D.N.Y. Feb.17, 1998); *cf. Silva v. Sanford*, 91 Civ. 1776, 1998 WL 205326 at *10–13 (S.D.N.Y. April 24, 1998) (Peck, M.J.) (discussing *Heck* and its progeny's application to prison disciplinary hearings).

McAllister claims that defendant Officers Rabassa, Pekusic and Vargas "together conspired with [unnamed] defendants to falsify information pertaining to the defendants discharging ... firearms" (Am.Cplt. at p. 4; *see also* McAllister 56.1 Stmt. ¶¶ 4, 5); that Barry and Freisen "failed to ... secure appropriate information and evidence for review and investigation of the police firearms and ballistics of each defendant" (Am.Cplt. at p. 5; *see also* McAllis-

ter 56.1 Stmt. ¶¶ 8, 10; McAllister 1/6/99 Aff. ¶¶ 3, 4); that Pisano and Latorres failed to "gather, examine and report [ballistics evidence]" (Am.Cplt. at p. 5; *see also* McAllister 56.1 Stmt. ¶ 6); that "[t]he defendants, together, each of them, did file false reports" regarding the shooting incident (Am.Cplt. at p. 6; McAllister 1/6/99 Aff. ¶¶ 6, 10); and that "defendants together gave false and perjured testimony ... that plaintiff fired a gun, and that the plaintiff pointed a gun at police" (Am.Cplt. at p. 6; McAllister 1/6/99 Aff. ¶¶ 2, 10).

■ McAllister was tried and found guilty of two counts of criminal possession of a weapon as a result of the arrest and prosecution he now challenges, and therefore a money judgment in McAllister's favor on his § 1983 false arrest and malicious prosecution claims would necessarily imply the invalidity of his criminal conviction or sentence. McAllister's conviction and sentence have not been reversed or otherwise declared invalid. McAllister therefore cannot meet the requirements set forth by the Supreme Court in *Heck v. Humphrey*. Defendants' summary judgment motion on McAllister's claims for false arrest and malicious prosecution should be granted. *See, e.g., Malizia v. Westchester County Dist. Attorney's Office*, No. 98–7043, 1998 WL 712424 at *2 (2d Cir. Oct.1, 1998) (unpublished) (false arrest and malicious prosecution claims were properly dismissed under *Heck* because plaintiff's "case did not terminate in

his favor"); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995) (dismissing false arrest, false imprisonment and malicious prosecution claims under *Heck*, because plaintiff "has not demonstrated that his conviction has been invalidated in any manner"); *Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir.1994) (claims that defendant police officers committed perjury and coerced witnesses to wrongfully identify plaintiff was properly dismissed under *Heck* because plaintiff "offered no proof that his conviction had been independently invalidated").[10]

## IV. *THE CITY AND COMMISSIONER BRATTON SHOULD BE GRANTED SUMMARY JUDGMENT ON MCALLISTER'S MONELL CLAIM SINCE MCALLISTER HAS FAILED TO ESTABLISH THAT THEY MAINTAINED A POLICY OR CUSTOM OF UNCONSTITUTIONAL BEHAVIOR*

■ It is well established that a municipality may not be held liable under § 1983 for alleged unconstitutional actions by its employees below the policymaking level solely upon the basis of respondeat superior. *E.g., Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d

---

10. *See also, e.g., Patrick v. Laskaris*, 25 F.Supp.2d 432, 433 (S.D.N.Y.1998) (dismissing plaintiff's claim for malicious prosecution under *Heck*, because "plaintiff's pleadings lack any allegation that his ... conviction has been reversed on appeal or otherwise expunged" and "[i]f plaintiff succeeds on any of [his] claims, his state court conviction would be invalid"); *Frazier v. Woods*, 96 Civ. 7813, 1998 WL 146231 at *3–4 (S.D.N.Y. March 25, 1998) (summary judgment for defendants on false arrest and perjury claims under *Heck* because "Plaintiff's convictions have not been reversed, expunged or declared invalid.... This § 1983 false arrest claim is a collateral attack on her convictions and the issue of probable cause, and such an attack is imper-

missible here"); *Rossi v. New York City Police Dep't*, 1998 WL 65999 at *5 ("Plaintiff cannot prove that his conviction or sentence has been reversed on appeal or expunged by executive order.... Thus, Plaintiff cannot meet the requirements set forth by the Supreme Court in *Heck*, and his claims for false arrest, false imprisonment and malicious prosecution must be dismissed as a matter of law."); *Duamutef v. Morris*, 956 F.Supp. 1112, 1116, 1117–18 (S.D.N.Y.1997) (Sotomayor, D.J.) ("Because plaintiff's conviction has not been reversed or otherwise invalidated, his claim of malicious prosecution must also be dismissed"; false arrest and conspiracy to prove claims also dismissed under *Heck*).

119, 122 (2d Cir.1991); *Palmer v. City of Yonkers*, 22 F.Supp.2d 283, 290 (S.D.N.Y. 1998); *Smith v. Montefiore Med. Ctr.*, 22 F.Supp.2d 275, 282–83 (S.D.N.Y.1998); *Brodeur v. City of New York*, 96 Civ. 9421, 1998 WL 557599 at *8–9 (S.D.N.Y. Sept.2, 1998); *Covington v. City of New York*, 94 Civ. 4234, 1998 WL 226183 at *3 (S.D.N.Y. May 4, 1998);[11] *Carnegie v. Miller*, 811 F.Supp. 907, 911 (S.D.N.Y.1993) (Wood, D.J.). Thus, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–83, 106 S.Ct. 1292, 1297–300, 89 L.Ed.2d 452 (1986); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983); *Brodeur v. City of New York*, 1998 WL 557599 at *9; *Gonzalez v. City of New York*, 97 Civ. 2246, 1998 WL 382055 at *2 (S.D.N.Y. July 9, 1998); *Covington v. City of New York*, 1998 WL 226183 at *3; *King v. Department of Correction*, 95 Civ. 3057, 1998 WL 67669 at *3 (S.D.N.Y. Feb.18, 1998); *Muniz v. New York*, 96 Civ. 5931, 1997 WL 576033 at *2 (S.D.N.Y. Sept.15, 1997); *Palacios v. Correctional Officer John Doe*, 95 Civ. 6855, 1997 WL 458816 at *1 (S.D.N.Y. Aug.12, 1997); *Woo v. City of New York*, 93 Civ. 7007, 1996 WL 457337 at *4 (S.D.N.Y. Aug.14, 1996) (Peck, M.J.); *Covington v. City of New York*, 916 F.Supp. 282, 288 (S.D.N.Y.1996) (Peck, M.J.). Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City. *Monell v. Department of Soc. Servs.*, 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58; *Batista v. Rodriguez*, 702 F.2d at 397; *Covington v. City of New York*, 1998 WL 226183 at *4; *Woo v. City of New York*, 1996 WL 457337 at *4.

In *Covington v. City of New York*, the Court summarized the law in this area as follows:

A plaintiff asserting liability against a supervisor under § 1983 need not show that the municipality had an explicitly stated rule or regulation. *See Villante v. Department of Corrections of the City of New York*, 786 F.2d 516, 519 (2d Cir.1986). Rather, the inference that such a policy existed may be drawn from plaintiff's proffer of circumstantial evidence, such as evidence that the municipality (1) so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within the jurisdiction, *see e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–92, 109 S.Ct. 1197, 1204–06, 103 L.Ed.2d 412 (1989), or (2) had notice of but repeatedly failed to make any meaningful investigation into (*i.e.*, were deliberately indifferent to) charges of misconduct by lower level employees (*e.g.*, charges that police officers used excessive force), *see e.g., Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 327–28 (2d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

*Covington v. City of New York*, 916 F.Supp. at 288; *accord, e.g., Woo v. City of New York*, 1996 WL 457337 at *4.

In his amended complaint, McAllister alleges that New York City

[1] did not provide medical treatment when the plaintiff complained of injuries caused by the defendants [during the shoot out and in the car accident]; [2] failed to properly train ... police officers in the use of deadly force; [3] is responsible for the acts of its officials when the District Attorney failed to in-

---

11. *See also, e.g., Johnson v. Rikers Island Hosp.*, 95 Civ. 10778, 1998 WL 91078 at *4 (S.D.N.Y. March 3, 1998); *King v. Department of Correction*, 95 Civ. 3057, 1998 WL 67669 at *3 (S.D.N.Y. Feb.18, 1998); *Roman v. Morace*, 97 Civ. 341, 1997 WL 777844 at *9 (S.D.N.Y. Dec.16, 1997); *Woo v. City of New York*, 93 Civ. 7007, 1996 WL 457337 at *4 (S.D.N.Y. Aug.14, 1996) (Peck, M.J.) ( & cases cited therein).

vestigate the police[s'] conduct, and knowingly used false evidence and testimony ... and falsified document[s]; [4] fail[ed] to provide programs necessitating follow-up supervision, when the Police department [has] had numerous incidents against African Americans by use of excessive physical and deadly force ... discriminatorily ..., [and 5] did not design disciplinary actions to address the numerous acts of [police] misconduct.

(Am.Cplt. at pp. 4, 6–9; *see also* McAllister 12/14/98 Aff. ¶ 1.) McAllister also alleges that Commissioner Bratton

did not prepare the internal [police] units to investigate police corruption and cover-up when excess unjustifiable deadly force was used against the plaintiff and subjected every citizen, resident to the instant death by actions and conduct of the defendant's police officers shooting in open public at a moving vehicle while inside a crowded vehicular and pedestrian movement. That defendant's conduct has been report[ed] previously under police misconduct and corruptional cover-up in the Police Department use of deadly force against the public. That

the police officers named as defendants within this complaint did not receive proper training and the proper internal investigation and ballistic testing as authorized by the defendant City of New York, policies and procedures were not followed and should have been foreseen by the Police Chief to secure public safety and lawful proceedings investigating police misconduct.

(Am.Cplt. at p. 7; *see also*, McAllister 12/14/98 Aff. ¶ 1; McAllister 1/6/99 Aff. ¶¶ 3, 5, 16.)

 McAllister's claims that the City and Commissioner Bratton are liable on a respondeat superior basis for the acts of the district attorney and police officers are clearly not cognizable under *Monell*. Further, McAllister has failed to present evidence of any custom or policy concerning police misconduct, excessive force, police cover ups, etc., much less that he suffered deprivation of a constitutional right as a result.[12] Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation. *See, e.g., Young v. County of Fulton*, 160 F.3d 899, 903–04

12. McAllister submitted newspaper clippings of alleged police brutality cases in support of his *Monell* claims. (McAllister 12/14/98 Aff.; McAllister 1/6/99 Br.Exs.) Newspaper articles are hearsay, however, and therefore are not admissible evidence of New York City Police Department policy or custom (although they might be admissible to show notice to the City of allegations of misconduct). *See, e.g.,* Fed. R.Civ.P. 56(e); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C.Cir.1986) (Ginsburg, C.J. & Bork, C.J.) ("Plaintiffs urge us to include and consider, ... *inter alia*, bare complaints, pleadings, and press clippings, unsubstantiated by testimony, concerning alleged incidents of the use of excessive force by police officers. As the district court recognized, these hearsay items could show no more than notice to the city that allegations had been made. The items were admitted for that limited purpose, and 'not for the purpose of establishing the truth of those [allegations.]' ... We therefore cull out such items as failing to show actual, as distinguished from merely alleged, occurrences."); *Ladner v. City of New York*, 20 F.Supp.2d 509, 519

(E.D.N.Y.1998) ("newspaper article[s][are] inadmissible hearsay and unusable to defeat summary judgment"); *Washington v. Borough*, Civ.A. No. 89–8169, 1993 WL 273418 at *1 (E.D.Pa. July 15, 1993) ("The citation to other lawsuits and newspaper articles is insufficient to evidence that [an unconstitutional police] policy or custom exists."); *Naantanbuu v. Abernathy*, 816 F.Supp. 218, 228 (S.D.N.Y.1993); *Handle v. City of Little Rock*, 772 F.Supp. 434, 437 (E.D.Ark.1991) ("[A]s to newspaper articles, the articles themselves, unsubstantiated by testimony, may show no more than notice to the city that allegations had been made, but would not be admissible to prove the truth of the allegations of excessive force."); *Metzner v. D.H. Blair & Co.*, 689 F.Supp. 262, 266 n. 6 (S.D.N.Y.1988) ("Newspaper articles are inadmissible hearsay.") ( & cases cited therein); *Vanni v. City of New York*, Nos. 85 C 1975 & 2482, 1988 WL 1956 at *5 (E.D.N.Y. Jan.5, 1988) ("Of course, the newspaper articles referred to by plaintiffs concerning the use of excessive force by New York City police officers would not be admissible evidence.").

(2d Cir.1998) (affirming dismissal of plaintiff's *Monell* claim because "her allegations failed to establish that she suffered any deprivation of her rights by reason of an official policy, custom, or practice" of the municipal defendants); *Oparaji v. City of New York*, 152 F.3d 920 (table), No. 97–7517, 1998 WL 432988 at *1 (2d Cir. April 21, 1998) ("[I]t is clear that the district court properly dismissed [plaintiff's] § 1983 claims. [Plaintiff] does not provide any facts in support of his conclusory allegation of the City's failure to properly train and supervise police officers amounts to a custom or policy, or that this custom or policy caused [plaintiff's] injuries."); *Dwares v. City of New York*, 985 F.2d at 100 ("The mere assertion … that a municipality has … a custom or policy [that violates plaintiff's constitutional rights] is insufficient in the absences of allegations of fact tending to support, at least circumstantially, such an inference.… Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."); *Smith v. Montefiore Med. Ctr.*, 22 F.Supp.2d at 283 (summary judgment for defendants on *Monell* claim because "bare allegations of … a policy or custom, without any supporting evidence, do not constitute … proof"); *Brodeur v. City of New York*, 1998 WL 557599 at *9; *Gonzalez v. City of New York*, 1998 WL 382055 at *3 ("There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell*. The absence of any such allegation precludes a finding of liability against

the Warden in his official capacity."); *Woo v. City of New York*, 1996 WL 457337 at *5 ("Conclusory allegations by a plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent the production of evidence to back up such an allegation."); *Bruno v. City of New York*, 89 Civ. 6661, 1992 WL 84471 at *2 (S.D.N.Y. April 15, 1992) (Wood, D.J.) (plaintiff's conclusory allegation that "constitutional violations were 'pursuant to a custom, policy or practice of the City of New York Police Department' " is insufficient to state a *Monell* claim).[13]

■ McAllister points only to his own alleged beating, false arrest and denial of medical treatment and the Police Department's alleged conspirational "cover up" as evidence of a New York City policy. Even if McAllister were to prevail at trial on his claims, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991); *see also, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Dwares v. City of New York*, 985 F.2d at 100 (same); *Kampfer v. County of Fulton*, 107 F.3d 3 (table), Nos. 94–9110, 94–9201, 1997 WL 48990 at *1 (2d Cir. Jan.15, 1997) (affirming dismissal of plaintiff's *Monell* claim because plaintiff's claim "lacks any

---

**13.** *See also, e.g., Covington v. City of New York*, 1998 WL 226183 at *4 (granting defendants summary judgment on *Monell* claims because "plaintiff does not offer any evidence in support of his claim that [alleged unconstitutional police department] policies exist or that there is a causal connection between these alleged policies and the alleged deprivation of his constitutional rights"); *Crown v. Wagenstein*, 96 Civ. 3895, 1998 WL 118169 at

*1 (S.D.N.Y. March 16, 1998); *King v. Department of Correction*, 1998 WL 67669 at *3; *Roman v. Morace*, 1997 WL 777844 at *9; *Muniz v. New York*, 1997 WL 576033 at *2; *Palacios v. Correctional Officer John Doe*, 1997 WL 458816 at *1; *Estes–El v. New York State Dep't of Motor Vehicles*, 95 Civ. 3454, 1997 WL 342481 at *4 (S.D.N.Y. June 23, 1997).

allegation that this isolated action was customary in this municipality or involved a decision by a municipal policymaker"); *Robinson v. Department of Corrections,* 96 Civ. 8290, 1998 WL 883301 at *3 (S.D.N.Y. Dec.17, 1998); *Palmer v. City of Yonkers,* 22 F.Supp.2d at 290 ("the court will not infer the existence of a municipal policy from a single incident"); *Smith v. Montefiore Med. Ctr.,* 22 F.Supp.2d at 282–83; *Brodeur v. City of New York,* 1998 WL 557599 at *7, *9 (dismissing complaint against municipal defendant because "the complaint fails to allege any policy or custom under which unconstitutional practices occurred. The conclusory allegations in the complaint relate only to how plaintiff was treated, not to any policy or custom affecting the general populace or class of persons."); *Ramos v. County of Westchester,* 95 Civ. 9723, 1997 WL 621263 at *4 (S.D.N.Y. Oct.7, 1997) (same); *Woo v. City of New York,* 1996 WL 457337 at *5; *Carnegie v. Miller,* 811 F.Supp. at 911.

 McAllister's failure to train and supervise claims against Commissioner Bratton and the City must also be dismissed.[14] In order to establish a § 1983 *Monell* claim based on failure to train or supervise, the plaintiff must demonstrate municipal culpability and causation. *See, e.g., Board of County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Covington v. City of New York,* 1998 WL 226183 at *4. The Second Circuit has set forth the three factors the plaintiff must establish in order to show municipal culpability and causation in a failure to train claim:

> In *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992), this Court listed three showings required to support a claim that a municipality's failure to train amounted to "deliberate indifference" of the rights of citizens: (1) that "a policymaker [of the municipality] knows 'to a

moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker,* 974 F.2d at 297–98 (citation omitted). Under the *Walker* test, a claim for failure to train cannot be sustained unless the employees violated a clearly established federal constitutional right. *See Watson v. Sexton,* 755 F.Supp. 583, 588 (S.D.N.Y.1991) ("To be 'deliberately indifferent' to rights requires that those rights be clearly established.").

*Young v. County of Fulton,* 160 F.3d at 903–04. Here, McAllister has not established the existence of any of the failure to train or supervise factors. McAllister has not established that there is any "direct causal link" between the City and the Commissioner's alleged failure to train and supervise, and the alleged constitutional violations. *See, e.g., Board of County Comm'rs v. Brown,* 520 U.S. at 404, 117 S.Ct. at 1388; *Covington v. City of New York,* 1998 WL 226183 at *4.

Accordingly, McAllister has failed to produce any evidence from which a reasonable juror could infer that the City or Commissioner Bratton had a policy or practice of failing to investigate, and failing to train or supervise its officers concerning the use of excessive force, false arrest, or denial of medical treatment, or that Commissioner Bratton was personally involved in the alleged violations of his rights. Defendants are entitled to summary judgment on the *Monell* claims.

---

**14.** To the extent that McAllister sues Commissioner Bratton in his official capacity, this claim is also without merit, because McAllister has offered no evidence that Commission-er Bratton was personally involved in the events that allegedly deprived him of his constitutional rights. *See* cases cited above at pages 696–97.

## CONCLUSION

For the reasons set forth above, defendants' summary judgment motion should be granted. Because defendant Officer Fontanez did not move for summary judgment on plaintiff McAllister's excessive force claim, that claim remains for trial. Pursuant to the Court's existing scheduling order, the parties are to submit a proposed pretrial order, conforming to Judge Wood's requirements, within 30 days of this Report and Recommendation, i.e., by April 22, 1999. Ms. Baldwin is to immediately send Mr. McAllister a copy of Judge Wood's pretrial order requirements. The proposed pretrial order is to be limited to Mr. McAllister's excessive force claim against Office Fontanez only.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72, 6(a), 6(e).

March 22, 1999.