Anthony WATSON, Plaintiff,

v.

John McGINNIS Superintendent, et al., Defendants.

No. 96 Civ. 7212(LAK).

United States District Court, S.D. New York.

May 1, 1997.

position papers to plaintiff's objections, dated April 29, 1997.

Magistrate Judge Peck plainly is correct in his view that the complaint is sufficient as to Officer Ruiz and insufficient as to defendants McGinnis and Many. There is no reason to deny plaintiff the opportunity to amend in an effort to state a claim against the latter defendants, so his report and recommendation with respect to these three defendants will be adopted.

Magistrate Judge Peck recommends also that the complaint be dismissed as to defendant Decker for failure to make timely service. It appears from the objections, however, that plaintiff has made some efforts to effect service. Accordingly, while Judge Peck's recommendation certainly is not out of order, the Court will grant a further extension of time within which to effect service.

Based on the foregoing, (1) the motion to dismiss as to defendant Ruiz is denied, (2) the motion to dismiss as to defendants McGinnis and Many is granted, (3) plaintiff may serve and file an amended complaint within 21 days of the date hereof in an effort to state a legally sufficient claim against defendants McGinnis and Many, and (4) plaintiff's time to effect service on defendant Decker is extended until June 15, 1997.

SO ORDERED.

Anthony Watson, Sonyea, NY, pro se.

Annemarie Prudenti, New York City, for Defendants.

## ORDER

KAPLAN, District Judge.

By report and recommendation dated April 16, 1997, Magistrate Judge Andrew J. Peck recommended that (1) the complaint be dismissed without prejudice as to defendants McGinnis and Many for lack of personal involvement, (2) the complaint be dismissed as to defendant Decker without prejudice for failure to timely serve process on him, and (3) the motion to dismiss be denied as to Correction Officer Ruiz. The plaintiff has filed objections, dated April 21, 1997. The State Attorney General's office has filed op-

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

In this 42 U.S.C. § 1983 action, pro se plaintiff Anthony Watson seeks monetary damages of over $10 million and "administrative protection" from the superintendent, a captain and two corrections officers at Downstate Correctional Facility for alleged violations of Watson's constitutional rights. (Complaint, dated April 14, 1996, § V.) Watson alleges that defendant Corrections Officer Ruiz told other inmates that Watson was a "snitch," and defendant Corrections Officer Decker watched while another inmate attacked Watson, cutting Watson's throat. (Cplt. § IV.) Watson alleges that he had

written to Superintendent John McGinnis [1] about Officer Ruiz's action and that Captain William Many had responded that they would look into it.

Defendants McGinnis, Many and Ruiz move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Officer Decker, who no longer works for the Department of Corrections, does not appear to have been served with the summons and complaint.

For the reasons set forth below, I recommend that the Court grant the motion to dismiss without prejudice as to defendants Supt. McGinnis and Capt. Many for lack of personal involvement, and deny the motion to dismiss as to defendant Corrections Officer Ruiz. I also recommend sua sponte that the Court dismiss the complaint without prejudice as to Corrections Officer Decker for failure to serve him within 120 days as required by Fed.R.Civ.P. 4(m).

## FACTS

On a motion to dismiss, the Court must accept the well-pleaded allegations in the complaint as true. *E.g., Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The Court will summarize the allegations in Watson's complaint without resort to the phrase "plaintiff alleges" before each statement from the complaint.

On March 26, 1996,[2] Corrections Officer Ruiz questioned Watson concerning a broken television set. (Watson Br. at 1; Cplt. § IV.) When Watson said he had no knowledge, Corrections Officer Ruiz locked Watson in his cell and told the other inmates that: (1) Watson said that they had broken the television set and (2) Ruiz had placed Watson in "keeplock" so the other inmates would not "hurt him … for being a snitch." (Cplt. § IV; Watson Br. at 1.) After other inmates told Watson about Ruiz's comments, Watson wrote to Superintendent McGinnis that he was "in some trouble with the inmates" due to Officer Ruiz's actions. (Cplt. § IV; Watson Br. at 1.) Watson's brief alleges that his

imminent and grave danger should have been apparent to Supt. McGinnis because of the "unwritten rule" in prisons that "snitches are much hated." (Watson Br. at 1.)

The following day, March 27, 1996, Watson received a letter from Captain William Many, Acting Deputy Superintendent for Security, stating that Watson's letter had been received and would be handled "appropriately." (Cplt. § IV; Watson Br. at 2.) Later that evening, Officer Decker told Watson to "step out of his cell" to "get some air by the steps." (Cplt. § IV; Watson Br. at 2.) About an hour later, Watson was approached by another inmate, Lewis McGraw, who threatened that "snitches get stitches!" (Cplt. § IV.) McGraw slashed Watson's neck with a weapon while Officer Decker watched without intervening. (Cplt. § IV; Watson Br. at 2.)

After the attack, Officer Decker locked Watson back in his cell, saying his wounds "didn't look too bad," and left. (Cplt. § IV; Watson Br. at 2.) Watson was treated later at the prison hospital, where photographs of his injuries were taken. (Cplt. § IV–A.)

Watson seeks "in excess" of $10 million damages "and administrative protection from the carelessness of the state officials and employees." (Cplt. § V.) He requests a jury trial. (*Id.*)

## ANALYSIS

### I. WATSON'S SECTION 1983 CLAIMS AGAINST SUPERINTENDENT McGINNIS AND CAPTAIN MANY FAIL BECAUSE THE COMPLAINT DOES NOT ALLEGE THAT THEY HAD ANY PERSONAL INVOLVEMENT IN HIS ATTACK

 "To prevail in a § 1983 case, a plaintiff must show that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law." *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1104 (S.D.N.Y.1995) (Peck,

---

1. Superintendent McGinnis' name is spelled "McGinnis" in the caption of the complaint.

2. Watson's complaint alleges that Ruiz called him a "snitch" on March 23, 1996 (Cplt. § IV),

but both Watson's and defendants' briefs state that this incident occurred on March 26, 1996. (*See* Watson Br. at 1; Defs' Br. at 2.)

M.J.) (citing 42 U.S.C. § 1983;[3] *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988)). "In order to maintain a cause of action against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions." *Zamakshari v. Dvoskin,* 899 F.Supp. at 1109 (citing *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *accord, e.g., McCray v. Kralik,* 96 Civ. 3891, 1996 WL 378273 at *3 (S.D.N.Y. July 1, 1996) (Peck, M.J.); *Dean v. Abrams,* 94 Civ. 3704, 1995 WL 791966 at *2 (S.D.N.Y. Dec. 26, 1995) (Peck, M.J.). "Thus, a supervisor who has not directly participated in the alleged deprivation of constitutional rights cannot be found liable for damages, with three exceptions: (1) if after learning of the deprivation through a report or appeal, the supervisor failed to remedy the wrong; (2) if the supervisor created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (3) if the supervisor was grossly negligent in managing the subordinates who caused the unlawful condition or event." *Zamakshari v. Dvoskin,* 899 F.Supp. at 1109 (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)); *accord, e.g., McCray v. Kralik,* 1996 WL 378273 at *3.

█ It is undisputed that Supt. McGinnis and Capt. Many were not personally involved in Officers Ruiz's and Decker's actions that lead to an inmate slashing Watson. Watson, therefore, has no claim against McGinnis and Many unless one of the above exceptions apply. Watson's complaint against McGinnis and Many alleges that they did not respond appropriately to his letter requesting help. (Cplt. § IV.) However, according to Watson's own complaint, as soon as Supt. McGinnis received the letter he forwarded it to Capt.

Many, who immediately informed Watson that the matter would be investigated. (*Id.*) Thus, none of the exceptions are applicable here.

█ Moreover, even if Supt. McGinnis and Capt. Many had ignored Watson's letter, that would not be sufficient to establish supervisory liability. The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability. *See, e.g., Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); *Morrison v. O'Connel,* 93 Civ. 8852, 1995 WL 386478 at *2 (S.D.N.Y. June 28, 1995); *Greenwaldt v. Coughlin,* 93 Civ. 6551, 1995 WL 232736 at *4 (S.D.N.Y. Apr. 19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Cepeda v. Coughlin,* 91 Civ. 2469, 1995 WL 23566 at *3 (S.D.N.Y. Jan. 19, 1995); *Clark v. Coughlin,* 92 Civ. 0920, 1993 WL 205111 at *5 n. 2 (S.D.N.Y. June 10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability."), *aff'd mem.,* 17 F.3d 391 (2d Cir. 1993); *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989).

Accordingly, I recommend that the Court dismiss Watson's complaint against Superintendent McGinnis and Captain Many, without prejudice to Watson filing an amended complaint against these defendants within 30 days if he can allege further facts that would justify a cause of action.

## II. WATSON'S COMPLAINT AGAINST RUIZ SHOULD NOT BE DISMISSED BECAUSE IT STATES AN EIGHTH AMENDMENT CLAIM

The court's role in deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

---

3. 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

" 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Saunders v. Coughlin*, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar.15, 1994) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). " '[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Saunders v. Coughlin*, 1994 WL 88108 at *2 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). A Rule 12(b)(6) motion will be granted " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Saunders v. Coughlin*, 1994 WL 88108 at *2 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). And when reviewing a pro se complaint, the court must use less stringent standards than if the complaint had been drafted by counsel. *See, e.g., LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Saunders v. Coughlin*, 1994 WL 88108 at *2 (citing *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)).

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court held that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, 511 U.S. at 847, 114 S.Ct. at 1984. "In particular, as the lower courts have uniformly held, and as [the Supreme Court has] assumed, '[p]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.' " *Id.*, 511 U.S. at 833, 114 S.Ct. at 1976.

Judicial decisions have recognized the serious implications of being labelled a "snitch" in prison. *See, e.g., Blizzard v. Hastings*, 886 F.Supp. 405, 410 (D.Del.1995) (being labeled a snitch "can put a prisoner at risk of being injured"); *Smith v. Ullman*, 874 F.Supp. 979, 985 (D.Neb.1994) (" 'Snitching' on fellow inmates, the practice of informing and cooperating with prison officials, is often brutally discouraged in the general [prison] population."); *Grubbs v. Bradley*, 552 F.Supp. 1052, 1078 (M.D.Tenn.1982) ("Life behind [prison] walls is to a large extent governed by the 'inmate code,' one tenet of which strictly prohibits prisoners from 'snitching' on fellow inmates. The consequences of becoming a snitch may include physical retaliation ...").

Other circuits have held that a correction officer's calling a prisoner a "snitch" in front of other inmates constitutes an Eighth Amendment violation. *See, e. g., Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir.1992) (overturning Rule 12(b)(6) dismissal of complaint alleging that prisoner was beaten by inmates because a guard told them the prisoner was a "snitch"; allegation that guard intended harm to prisoner by inciting other prisoners to beat him states a claim); *Miller v. Leathers*, 913 F.2d 1085, 1088 n. * (4th Cir.1990) ("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.' "), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir.1989) (reversing grant of summary judgment for defendants because "whether [the guards] called [a prisoner] a 'snitch' in the presence of other inmates is 'material' to a section 1983 claim for denial of the right not to be subjected to physical harm by employees of the state acting under color of law."); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir.1984) (reversing the district court's dismissal as frivolous of prisoner's claim that "prison officials have labeled him a snitch and are exposing him to inmate retaliation."); *Hendrickson v. Emergency Med. Services*, Civ. A. 95–4392, 1996 WL 472418 at *5 (E.D.Pa. Aug. 20, 1996) (denying defendants' summary judgment motion because of factual issue as to whether a guard called a prisoner a snitch in front of other inmates); *Thomas v. District of Columbia*, 887 F.Supp. 1, 4 (D.D.C.1995) (being "physically confronted by and threatened by inmates" after a guard started a rumor that prisoner was a snitch was "sufficiently harmful to make out an Eighth Amendment excessive force claim"; "[i]n the prison context ... one can think of few acts

that could be more likely to lead to physical injury [to an inmate] than spreading rumors of . . . informing.").

■ Although the parties have not cited, nor the Court found, a decision from the Second Circuit or the Southern District of New York on this point, the Court is persuaded by the above-cited decisions that a guard's intentionally calling a prisoner a snitch in order to cause him harm by other inmates states an Eighth Amendment excessive force claim. Watson's allegation that Ruiz told other inmates that Watson was a "snitch" (Cplt. IV) thus adequately states a claim against Ruiz. Defendants' motion to dismiss as to the claim against Ruiz therefore should be denied.

## III. WATSON'S COMPLAINT AGAINST OFFICER DECKER SHOULD BE DISMISSED SUA SPONTE FOR LACK OF SERVICE

Watson filed his complaint in this action on September 23, 1996.

Rule 4(m) of the Federal Rules of Civil Procedure provides:

*Time Limit for Service.* If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

Although Watson was at first unable to locate Decker (he is no longer employed by DOCS), Watson was provided with Decker's address in a letter from the Attorney General's Office dated February 5, 1997. In a memo endorsed order dated February 27, 1997, I denied Watson's request to have the Attorney General's office serve the summons and complaint on Decker, and ordered Watson to forward the appropriate documents to the Marshals for service. A review of the Court's docket sheet for this action discloses that there is still no affidavit of service on file with the Clerk's Office, and the Marshals

have informed my chambers that they have not received anything from Watson for service on Officer Decker.

More than 120 days having passed from filing of the complaint, and more than 60 days having passed since Watson was given Decker's address, and Watson having been advised of his obligations under Fed.R.Civ.P. 4(m), and there being no indication that Watson has had the complaint served on Decker (or even that he has forwarded it to the Marshals), I sua sponte recommend that the Court dismiss Watson's complaint as to Decker without prejudice for failure to timely serve it pursuant to Fed.R.Civ.P. 4(m) and for failure to prosecute.

### CONCLUSION

For the reasons set forth above, I recommend that the Court dismiss Watson's § 1983 complaint without prejudice as to Superintendent McGinnis and Captain Many for lack of personal involvement, deny the motion to dismiss as to Corrections Officer Ruiz, and dismiss Watson's complaint against Officer Decker without prejudice for failure to timely serve process on him.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,*

968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

DATED: New York City

April 16, 1997.