Romus ATKINS, Mark Bellotto, Dawn Brown, Jane Brown, Michael J. Croci, Jr., Michael P. Kracht and Robert Grassfield, Plaintiffs,

v.

COUNTY OF ORANGE, Joseph P. Rampe, former County Executive, sued in his individual capacity, Chris Ashman, Commissioner of Mental Health, sued in his individual and official capacities, and John and/or Jane Does, One through Twelve, Defendants.

No. 01 CIV. 11536(WCC).

United States District Court, S.D. New York.

March 14, 2003.

Thornton, Bergstein & Ullrich, Attorneys for Plaintiffs, Chester, Stephen Bergstein, Esq., Of Counsel.

Catherine M. Bartlett, County Attorney, Orange County, Attorneys for Defendant County of Orange, Goshen, David L. Darwin, Esq., Chief Asst. County Attorney, Of Counsel.

McCabe & Mack LLP, Attorneys for Defendant Chris Ashman, sued in his individual and official capacities, Poughkeepsie, David L. Posner, Esq., Of Counsel.

LeBoeuf, Lamb, Greene & MacRae L.L.P., Attorneys for Defendant Joseph P. Rampe, sued in his individual capacity, Albany, Robert J. Alessi, Esq., Yvonne E. Marciano, Esq., Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Romus Atkins, Mark Bellotto, Dawn Brown, Jane Brown, Michael J. Croci, Jr., Michael P. Kracht and Robert Grassfield (collectively "plaintiffs") bring this action against the County of Orange, Joseph P. Rampe, former County Executive, sued in his individual capacity, Chris Ashman, Commissioner of Mental Health, sued in his individual and official capacities, and John and/or Jane Does one through twelve (collectively "defendants"), pursuant to: 1) 42 U.S.C. § 1983 alleging violations of their rights under the Fourteenth and Eighth Amendments; 2) Title II of the Americans with Disabilities Act ("ADA"); 3) § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") alleging discrimination based on plaintiffs' mentally

disabled status; and 4) New York Correction Law § 137(5) alleging degrading treatment. Pursuant to FED. R. CIV. P. 12(b)(6), defendants now bring this motion to dismiss the third cause of action alleging discrimination based on the ADA and the Rehabilitation Act, the fourth cause of action alleging degrading treatment under New York Correction Law § 137(5) and all claims against Joseph P. Rampe. For the reasons stated below, the motion is granted in its entirety.

## BACKGROUND

The following statement of facts relative to the instant motion is based on the allegations in plaintiffs' Second Amended Complaint, which, for the purposes of this motion, we assume to be true.[1] All plaintiffs were incarcerated at the Orange County Correctional Facility (the "Jail") at various times between 1999 and 2002. (2d Am.Complt.¶¶ 11–17.) While incarcerated, each plaintiff was under the care of the Orange County Department of Mental Health ("DMH"), which operates and staffs the forensic mental health clinic (the "forensic clinic"). (Id. ¶ 29.) The forensic clinic employed two part-time psychiatrists to treat inmates at the Jail. (Id. ¶ 30.)

In 1995, the DMH Commissioner, Ashman, was personally informed by Susan Menon, then a nurse administrator working for the medical services contractor at the Jail, that the forensic clinic psychiatrists were routinely over-prescribing psychotropic drugs to inmates under their care. (Id. ¶ 33.) Two years later, Menon again informed Ashman of problems at the forensic clinic including over-medication, delays in treatment and lack of emergency backup treatment and facilities. (Id. ¶ 34.) In 1998, Menon along with another nurse, Lurana Berweger, again informed Ashman of the same problems. (Id. ¶ 35.)

In 1997, Menon met with Deputy County Executive Toni Murphy. (Id. ¶ 38.) She explained the treatment problems occurring in the forensic clinic and provided memos she had written to others in authority detailing the same problems. (Id.) Murphy told Menon that Rampe would be shocked by this information and that it would be dealt with after his re-election. (Id. ¶ 39.) In 1998, Berweger wrote a letter to Rampe outlining the same treatment problems she observed and included documentary support. (Id. ¶ 40.) Neither Ashman nor Rampe took measures to rectify the problems at the forensic clinic although at all times they were bound by the Consent Judgment in Merriweather v. Sherwood, No. 77 Civ. 3421 (S.D.N.Y.).[2]

Plaintiffs claim they were subjected to the following mistreatment while in jail: over-medication with psychotropic drugs; denial of timely psychiatric evaluations; denial of emergency psychiatric care; denial of timely prescription drug administration; denial of adequate staffing of observation holding cells; denial of adequate therapeutic psychiatric care; and denial of discharge planning and treatment plans. (2d Am.Complt.¶ 3.) Each plaintiff, howev-

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir.1993); In re AES Corp. Sec. Litig., 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

2. The Merriweather class action was brought in 1977 to secure better medical and mental health care at the facility, as well as improved living conditions in the form of recreational, educational, and other out-of-cell and out-of-tier activities. A compromise was reached and a Consent Judgment was entered by the Hon. Edward Weinfeld of this Court on October 27, 1978. Merriweather v. Sherwood, 518 F.Supp. 355, 356 (S.D.N.Y.1981).

er, has specific allegations that we will briefly review.

Atkins was incarcerated at the Jail in 2001. (*Id.* ¶ 47.) He suffers from schizophrenia and bipolar disorder and, upon his incarceration, was referred to the forensic clinic. (*Id.* ¶ 46.) One day later, a forensic clinic psychiatrist evaluated Atkins and prescribed medication, which Atkins refused to take. (*Id.* ¶ 48.) No action was taken when the forensic unit was informed of his refusal. (*Id.*) Atkins then experienced a psychotic episode after which he was placed in a "bullpen," pepper-sprayed, restrained and beaten. (*Id.* ¶¶ 49–50.) Without a psychiatrist's order, Atkins was placed in therapeutic restraint, a seclusion cell that is monitored by staff every fifteen minutes. (*Id.* ¶ 53.) Atkins was not seen by a forensic unit psychiatrist until two days later. (*Id.* ¶ 51.)

Bellotto, a minor with no previous history of mental illness, was serving a thirty-day sentence in 2000. (*Id.* ¶ 56.) A forensic unit psychiatrist, citing depression, prescribed Paxil to Bellotto. (*Id.* ¶¶ 56–57, 59.) Bellotto was not informed he could refuse medication; his mother protested the administration of the drug to her son. (*Id.* ¶¶ 60–61.) DMH continued to administer Paxil to Bellotto for the remainder of his sentence. (*Id.* ¶ 62.)

Dawn Brown was an inmate at the Jail on several occasions and suffers from schizoaffective disorder and bipolar disorder. (*Id.* ¶¶ 67–68.) In 2000, Dawn Brown was behaving irrationally and was referred to the forensic clinic. (*Id.* ¶ 69.) The nursing staff placed her on close watch but she was not seen by a psychiatrist until five days later. (*Id.* ¶¶ 70–71.) On several other occasions during her incarceration, Dawn Brown refused treatment and DMH took no further steps to provide her with care. (*Id.* ¶¶ 76, 80.) She was also put in keeplock isolation, restraints and was beaten. (2d Am.Complt.¶¶ 75, 77, 80–82.)

Jane Brown was incarcerated at the Jail in 2001 and suffers from cyclothymic disorder, panic disorder and post-traumatic stress disorder in addition to being a recovering substance abuser. (*Id.* ¶¶ 89–91.) A psychiatrist at the forensic clinic prescribed Paxil to Jane Brown but she frequently missed taking the drug because she was attending GED classes during the time it was distributed. (*Id.* ¶ 92.) Her request to have to the distribution schedule changed went unheeded until one week before her release. (*Id.* ¶¶ 92–93.) The forensic clinic provided no discharge planning and Jane Brown suffered withdrawal symptoms after release. (*Id.* ¶ 95.)

Croci was incarcerated at the Jail twice between 1999–2001 and suffers from bipolar disorder, claustrophobia and anxiety. (*Id.* ¶¶ 98–99.) Upon incarceration, Croci was referred to DMH "ASAP" but was not seen until many days later. (*Id.* ¶ 102.) When he was finally seen, he was administered a number of prescribed medications that left him in an "almost constant state of somnolence." (*Id.* ¶ 103.) During another period of incarceration, Croci was seen by DMH but there was no follow-up treatment even though he refused medication. (*Id.* ¶¶ 106, 109–10.) Thereafter, he had a psychotic episode, was beaten by corrections officers and restrained in the "bullpen." (*Id.* ¶¶ 107–8.)

Kracht has been incarcerated at the Jail more than ten times, the last time being in 2001. (*Id.* ¶¶ 116–17.) He suffers from bipolar disorder. (*Id.* ¶ 115.) Kracht alleges that DMH knew of his mental illness but denied him medication for his illness for a week. (*Id.* ¶ 118.) When he was finally seen by a psychiatrist, his previous mental health records were not reviewed and he was given several prescribed psychotropic medications. (*Id.* ¶¶ 119–20.) Upon learning of side effects Kracht was experiencing, a different psychiatrist

thereafter abruptly stopped one of his medications, which is not recommended, and put him on another one, which was not closely monitored. (*Id.* ¶¶ 123–24.) Kracht's medications were changed again and a caseworker noticed he was "sleeping day and night." (*Id.* ¶ 130.) Kracht alleges he missed "recreation and meal opportunities" and was otherwise deprived of any significant activity of any kind while at the Jail. (*Id.* ¶ 135.)

Grassfield was incarcerated in 2002 and suffers from bipolar disorder and post-traumatic stress disorder. Grassfield saw a psychiatrist four days after being admitted who then renewed the medications he had been deprived of since entering the Jail. (*Id.* ¶¶ 140, 142–43.) Grassfield claims, however, that he received his medications sporadically and became depressed. (*Id.* ¶ 144.) Grassfield then tried to commit suicide but when the corrections officers found him, they beat and handcuffed him. (*Id.* ¶¶ 149–50.) Grassfield was placed in keeplock isolation and again did not properly receive his medications. (*Id.* ¶¶ 152–53.) He again tried to commit suicide. (*Id.* ¶ 155.)

## DISCUSSION[3]

### I. *Standard on Motion to Dismiss*

As previously noted, on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See* cases cited, *supra* note 1. On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 James Wm. Moore Et Al., Moore's Federal Practice § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

### II. *The ADA and Rehabilitation Act*[4]

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under § 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability . . . shall, solely by reason

---

**3.** We note at the outset that plaintiffs do not address some claims in their opposition paper, enabling the Court to conclude that they have abandoned them. *Singleton v. City of Newburgh,* 1 F.Supp.2d 306, 312 (S.D.N.Y. 1998) (Conner, J.) (plaintiff's claim deemed "abandoned" and defendants' summary judgment granted where claim was alleged in the complaint but "not raised elsewhere in the record"); *Anti–Monopoly, Inc., v. Hasbro, Inc.,* 958 F.Supp. 895, 907 (S.D.N.Y.1997)

("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd,* 130 F.3d 1101 (2d Cir.1997). Despite plaintiffs' silence in these matters, we will discuss the sufficiency of their claims.

**4.** This Court has jurisdiction over the Rehabilitation Act under 28 U.S.C. §§ 1343(a)(3) & (4) and the ADA pursuant to 28 U.S.C. § 1331.

of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Supreme Court has held that these provisions extend to state prisons. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 208, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); *Shariff v. Artuz*, No. 99 Civ. 0321, 2000 WL 1219381, at *4 (S.D.N.Y. Aug. 28, 2000).

■ In order to establish a violation of Title II of the ADA, plaintiffs must show that: 1) he or she is a qualified individual with a disability; 2) he or she is being excluded from participation in, or being denied the benefits of some service, program or activity by reasons of his or her disability; and 3) the entity which provides the service, program or activity is a public entity. *Lee v. State of New York Dep't of Corr. Servs.*, No. 97 Civ. 7112, 1999 WL 673339, at *13 (S.D.N.Y. Aug. 30, 1999).

■ Under § 504 of the Rehabilitation Act, a plaintiff must show that: 1) he or she has a disability for purposes of the Rehabilitation Act; 2) he or she was "otherwise qualified" for the benefit he or she had been denied; 3) he or she has been denied the benefits "solely by reason" of his or her disability; and 4) the benefit is part of a "program or activity receiving Federal financial assistance." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir.1998).

In their third cause of action, plaintiffs allege that defendants discriminated against them by "punishing them for their symptoms of mental illness by placing them in keeplock isolation thereby exacerbating their mental illness" and by "failing to provide alternate punishments to keeplock isolation as a reasonable accommodation so that punishments which exacerbate mental illness are not imposed." (2d Am.Complt.¶¶ 178–79.) Defendants first argue that the ADA and

Rehabilitation Act claims be dismissed as to Atkins, Bellotto, Jane Brown, Crocci and Kracht because none of these plaintiffs allege that they were placed in keeplock isolation, and, of the two remaining plaintiffs, only Grassfield alleges that his condition was exacerbated by keeplock isolation, and therefore Dawn Brown's claim should also be dismissed. (Defs. Mem. Supp. Mot. Dismiss at 5.) Defendants further argue that the Second Amended Complaint does not allege that plaintiffs, who are mentally disabled, are treated any differently than inmates that are not mentally disabled because all inmates are subject to being placed in keeplock isolation if they exhibit violent or self-destructive behavior. (*Id.* at 6–7.) In addition, defendants argue that the ADA and Rehabilitation Act claims merely restate their § 1983 claims. (*Id.* at 7.) Finally, defendants argue that neither the ADA nor the Rehabilitation Act require alternatives to medical isolation as an "accommodation" to the plaintiffs. (*Id.* at 8.)

We remind defendants that when ruling on a 12(b)(6) motion, the Court will look at the Second Amended Complaint as a whole because failing to do so would undermine the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure. *Clark v. Town of Ticonderoga*, 213 F.Supp.2d 198, 202 (N.D.N.Y.2002); *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) ("Factual allegations alone are what matters."); *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir.1991) ("... federal pleading is by statement of claim, not by legal theory."); *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir.1945) ("... particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."). Thus, we will look at the Second Amended Complaint as a whole in determining whether plaintiffs have pre-

sented factual allegations sufficient to state claims under the ADA and Rehabilitation Act for which relief can be granted.

■■■ As the defense argues, plaintiffs, with the exception of Kracht, do not allege that they were denied the benefits of a service, program or activity in the Jail. Such a failure is a "fundamental defect" that may lead to the dismissal of the claims. *Lee*, 1999 WL 673339, at *14 (citing *Burgess v. Goord*, No. 98 Civ. 2077, 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where inmate did not allege that he was prevented from using recreation yard or attending religious services because of his severe difficulty walking on stairs); *Devivo v. Butler*, No. 97 Civ. 7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind)). Nor do plaintiffs allege that violent and self-destructive inmates who are disabled due to mental illness are treated any differently than violent, self-destructive inmates who are not disabled due to mental illness. The Orange County Jail Health Services Policy and Procedural Manual outlines when a prisoner will be put in keeplock isolation: whenever an inmate presents risk of danger to self or others.[5] Plaintiffs do not allege that the mentally disabled are the only prisoners subjected to this procedure while the non-mentally disabled prisoners are excluded therefrom. The purpose of the ADA and Rehabilitation Act statutes is to "eliminate discrimination on the basis of

disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe*, 148 F.3d at 82. With no allegation of disparate treatment, no claim for discrimination under the ADA or Rehabilitation Act lies.

■■■ As noted above, Kracht alleges that the "inappropriate medical regime caused him to sleep all the time, miss recreation and meal opportunities and otherwise deprive him of any significant activity of any kind while he was at the jail." (2d Am. Complt.¶ 135.) While this comes closer to stating a claim, Kracht is in essence challenging the adequacy of the mental health services provided at the Jail, not illegal disability discrimination. *Doe*, 148 F.3d at 82.

Plaintiffs argue that an alternative to keeplock isolation should be provided to the mentally disabled in order to avoid exacerbation of their illness. Many cases address ways in which to ensure meaningful access to services offered. *Lee*, 1999 WL 673339, at *14 (listing cases). In those cases, however, plaintiffs specified precise affirmative measures necessary to render the disabled individuals' access to a specified service meaningful. Here, plaintiffs suggest no alternative accommodations to keeplock isolation or any other procedure and, even if they did, they mention no specific service that is being denied as a result of the current procedures. Clearly, plaintiffs are dissatisfied with the quality of the mental health services, which is already covered under their

---

5. In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference, *see* FED. R. CIV P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996), and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46–48 (2d Cir.

1991); *Lee*, 1999 WL 673339, at *2 n. 4; *see United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.–Petrobras*, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("the Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in their suit.").

§ 1983 claims. *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (stating that plaintiff failed to state a claim under the ADA because the core complaint was incompetent treatment of his underlying medical condition). These factual allegations, even construed in the light most favorable to the plaintiffs, do not state a claim under the ADA or Rehabilitation Act.

### III. *Claims Against Rampe*

Rampe is being sued in his individual capacity under § 1983, the ADA, the Rehabilitation Act and New York Correction Law. (2d Am.Complt.¶¶ 20, 163, 180, 182.) Plaintiffs allege that Rampe was bound by the terms of the Consent Judgment in *Merriweather* and took no action to address the problems he learned of through a letter and information received by Murphy. (*Id.* ¶¶ 42–44.) Defendants argue that Rampe has qualified immunity from all claims because he acted reasonably and in addition, he had no personal involvement, a prerequisite for § 1983 liability. (Defs. Mem. Supp. Mot. Dismiss at 10–17.)

█ Defendants do not specifically address the question of whether plaintiffs may assert claims under the ADA and Rehabilitation Act against Rampe in his individual capacity. Because Title II of the ADA provides redress to disabled individuals for discrimination by a public entity, individuals may not be sued. *Hallett v. New York State Dep't of Correctional Servs.,* 109 F.Supp.2d 190, 199 (S.D.N.Y. 2000); *Cerrato v. Durham,* 941 F.Supp. 388, 395 (S.D.N.Y.1996); *Lee,* 1999 WL 673339, at *13 n. 14. Thus, the ADA and Rehabilitation Act claims against Rampe are dismissed.

█ To state a claim under § 1983, plaintiffs must allege direct or personal involvement in the alleged constitutional violation. *Higgins v. Coombe,* No. 95 Civ. 8696, 1997 WL 328623, at *11 (S.D.N.Y. June 16, 1997); *Hallett,* 109 F.Supp.2d at 201; *Woods v. Goord,* No. 01 Civ. 3255, 2002 WL 731691, at *6 (S.D.N.Y. April 23, 2002). Personal involvement means direct participation in the infraction, failure to remedy the alleged wrong after learning of it through a report or appeal, creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). Plaintiffs allege that the letter sent to Rampe by Berweger and the information given to Murphy, the Deputy County Executive, establish Rampe's personal involvement in the alleged constitutional violations, especially in light of the *Merriweather* Consent Judgment.[6] (2d Am.Complt.¶¶ 38, 40.) We disagree.

█ It is well established that plaintiffs cannot bring a § 1983 claim against individuals based solely on their supervisory capacity or their high positions of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). It is equally clear that allegations that an official ignored a prisoner's letter is not enough to establish personal involvement. *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (noting that the second type of personal involvement, failing to remedy the alleged wrong after learning of it, should be construed narrowly because the case from which it originated involved a supervisory official who was mandated by regulation to receive reports of certain prison conditions);

---

6. To the extent plaintiffs are alleging violations of the *Merriweather* Consent Judgment, their action is not properly before this Court and thus cannot be considered. *Woods,* 2002 WL 731691, at *7 n. 13 (citing *Kaminsky v.*

*Rosenblum,* 737 F.Supp. 1309, 1317 n. 6 (S.D.N.Y.1990) (stating that violations of the decree must be brought before the judge who retains supervision over decree)).

*Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997); *Higgins,* 1997 WL 328623, at *11; *Woods,* 2002 WL 731691, at *7; *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998). While the letter and information in the present case came from nurses working at the Jail and not the plaintiffs themselves, it still holds true that "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." *Johnson,* 234 F.Supp.2d at 363. Personal involvement will be found, however, if an official acts on a prisoner's grievances or otherwise responds to them. *Id.* Rampe did not act, nor did he respond to the letter or information received by Murphy. Because there is no personal involvement, the § 1983 claims against Rampe are dismissed.

## IV. *New York Correction Law* [7]

Defendants argue that the New York Correction Law claim must be dismissed because: plaintiffs failed to file a notice of claim as required by New York County Law § 52; there is no private cause of action; the statute regulates only the activities of the sheriff; the statute of limitations expired with respect to most of the incidents in the complaint; and the alleged conditions were not "degrading." (Defs. Mem. Supp. Mot. Dismiss at 17–18.) We agree that the New York Correction Law

claim must be dismissed because plaintiffs failed to file a notice of claim.

 The notice of claim requirement is an important safeguard to protect municipalities from stale and fraudulent claims while also allowing the government an opportunity to investigate the claim. *Mills v. County of Monroe,* 59 N.Y.2d 307, 310, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983). In this case, there is no dispute that plaintiffs did not file a notice of claim. (2d Am.Complt.¶ 9.) Plaintiffs maintain that no notice of claim was required because they seek to vindicate a public interest, namely challenging the inhumane mental health treatment at the Jail. (*Id.*) Indeed, vindication of a public right is an exception to the notice of claim requirement recognized by the New York Court of Appeals as opposed to an action brought merely to enforce a private right. *Union Free School Dist. No. 6 of Towns of Islip & Smithtown v. New York State Human Rights Appeal Bd.,* 35 N.Y.2d 371, 380, 362 N.Y.S.2d 139, 320 N.E.2d 859 (1974). There, the Division of Human Rights was asserting a claim on behalf of a class of women plaintiffs alleging that the school board's maternity leave policy was discriminatory and that such a claim brought by the Division was a vindication of the public's interest in the elimination of discrimination based on sex.[8] *Id.* Nearly a decade later, the New York Court of Appeals distinguished the facts of this case when an individual plaintiff brought suit against a county alleging she was fired based on her race and national origin. *Mills,* 59 N.Y.2d at 309, 464 N.Y.S.2d 709, 451

---

**7.** This Court has jurisdiction over the New York Correction Law claim pursuant to 28 U.S.C. § 1367 as it arises from the same nucleus of operative facts as the federal claims.

**8.** While it is acknowledged that all actions brought to enforce civil rights can be said to

be in the public interest, "actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group are deserving of special treatment." *Mills,* 59 N.Y.2d at 311, 464 N.Y.S.2d 709, 451 N.E.2d 456.

N.E.2d 456. In *Mills,* the court found that the actionable conduct on the part of the county referred only to conduct that related to the plaintiff and that the plaintiff sought monetary relief for lost wages. *Id.* at 312, 464 N.Y.S.2d 709, 451 N.E.2d 456. Accordingly, she was not seeking to vindicate a public interest and her claim was dismissed. *Id.*

 Further, other district courts have found that the public interest exception does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries. *Turner v. County of Suffolk,* 955 F.Supp. 175, 177 (E.D.N.Y.1997) (dismissing plaintiff's complaint because it redressed only plaintiff's individual injuries and the relief requested only benefitted plaintiff); *Finley v. Giacobbe,* 827 F.Supp. 215, 220 (S.D.N.Y.1993) (stating that while a victory for the plaintiff may have a positive effect on the public interest she claims to have been vindicating, the court could not say that her cause of action was more imbued with the public interest than that of any other human rights plaintiff); *Brown v. Massena Memorial,* No. 99 Civ. 1729, 2000 WL 381941, at *6 (N.D.N.Y. April 11, 2000) (dismissing plaintiff's claim because it was not of any greater value to the public than any other award to a civil rights plaintiff).

Here, plaintiffs are solely seeking redress for their individual injuries and while plaintiffs' recovery might have an effect on the mental health conditions in jails, we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs. *Finley,* 827 F.Supp. at 220. Therefore, the fourth cause of action under New York Correction Law § 137(5) is dismissed.

### CONCLUSION

For the above stated reasons, defendants' motion to dismiss plaintiffs' third cause of action under the ADA and Rehabilitation Act, fourth cause of action under the New York Correction Law § 137(5) and all claims against Joseph P. Rampe is granted in its entirety.

SO ORDERED.